**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

SANDRA SMITH PLAINTIFF

v. 3:25-cv-00272-JM-JJV

FRANK BISIGNANO,
Commissioner,
Social Security Administration, DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge James M. Moody Jr. The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection. The objections must be filed with the Clerk no later than fourteen (14) days from the date of the findings and recommendations. A copy must be served on the opposing party. The district judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

## RECOMMENDED DISPOSITION

Plaintiff, Sandra Smith, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for disability insurance benefits. The Administrative Law Judge (ALJ) concluded Plaintiff had not been under a disability within the meaning of the Social Security Act, because she could perform her past work as an eligibility worker despite her impairments. (Tr. 57-65.)

This review function is extremely limited. The court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and to analyze whether Plaintiff was denied benefits due to legal error. *Long v. Chater*, 108 F.3d

185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, courts must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; a court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The history of the administrative proceedings and the statement of facts relevant to this decision are contained in the respective briefs and are not in serious dispute. Therefore, they will not be repeated in this opinion except as necessary. After careful review of the pleadings and evidence in this case, I find the Commissioner's decision is supported by substantial evidence and Plaintiff's Complaint should be DISMISSED.

Plaintiff just turned sixty-five years old. (Tr. 80.) She earned a bachelor's degree in business administration, (*id.*), and has past relevant work as a social worker for the Arkansas Department of Human Services (DHS). (Tr. 81-82.) She has an impressive work history, having held her job at the DHS for thirty-three years. (Tr. 82.)

The ALJ[1] found Ms. Smith meets the insured status requirements of the Social Security Act through December 31, 2027. (Tr. 59.) She has not engaged in substantial gainful activity

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

since her alleged onset date of October 28, 2022. (*Id.*) She has "severe" impairments in the form of "diabetes mellitus, degenerative changes in the lumbar spine, and diabetic retinopathy." (*Id.*) The ALJ further found Ms. Smith did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 60-61.)

The ALJ determined Ms. Smith had the residual functional capacity (RFC) to perform a slightly reduced range of sedentary work. (Tr. 61.) The ALJ utilized the services of a vocational expert (VE) to determine if jobs existed that Plaintiff could perform despite her impairments. (Tr. 101-108.) Based in part on the testimony of the VE, the ALJ determined Plaintiff could perform her past job as an eligibility worker. (Tr. 64-65.) Accordingly, the ALJ determined Ms. Smith was not disabled. (Tr. 65.)

The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making his decision the final decision of the Commissioner. (Tr. 57-65.) Plaintiff filed the instant Complaint initiating this appeal. (Doc. No. 1.)

In support of her Complaint, Plaintiff makes two challenges to the ALJ's determination that she could perform her past work, given her vision impairment. (Doc. No. 11 at 7-17.) I find both challenges to be without merit.

Plaintiff's first argument relates to the state agency doctor, Rita Allbright, M.D., finding that Plaintiff should "avoid work requiring reading print smaller than that seen in magazine print." (Tr. 127.) The ALJ found her "visual limitations" to be persuasive, saying, "Dr. Allbright did not express her visual limitations in vocationally relevant terms. However, the visual limitations are supported by and consistent with the evidence of record." (Tr. 63.) Based on this finding, Plaintiff

[2] 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

argues, "Having credited the only visual opinion in the record, the ALJ proceeded to adopt none of it. The RFC contains no reading restriction, no print-size restriction, and no magnification accommodation. (Tr. 61). Nothing in it is traceable to Dr. Allbright at all." (Doc. 11 at 11.) From there, Plaintiff leaps to:

> The ALJ took a raw acuity measurement and converted it himself into a function-by-function set of frequency limitations that no physician, examiner, or consultant ever endorsed. That inference concerns how a given level of measured acuity, in a claimant with progressive diabetic retinopathy with macular edema, translates into sustained workplace visual functioning. It is quintessentially medical, and an adjudicator is not permitted to draw it from his own review of the clinical data.

(*Id.* at 12.)

In response, the Commissioner raises a compelling point. Citing to the administrative hearing, the Commissioner notes that Plaintiff's counsel complained that, "'Basically, DDS interpreted this to mean that if it wasn't smaller than magazine print, she would be okay. I'm not exactly sure how you interpret that because that's not exactly what the—it's not in Social Security terms….'(Tr. 78)." (Doc. No. 13 at 5-6.) To now argue that the ALJ committed reversible error by not including the "not in Social Security terms" language used by Dr. Allbright seems disingenuous. I am further persuaded by the Commissioner's point that Plaintiff "fails to explain how and further fails to demonstrate the ALJ erred by utilizing vocationally relevant terms, such as near acuity and far acuity, which are the precise terms contained in the Dictionary of Occupational Titles (DOT)." (*Id.* at 6); 1991 WL 671592.

Plaintiff's second argument is that the ALJ committed error by not including the "small-print restriction" when providing hypothetical questions to the VE. (Doc. No. 11 at 14-17.) The ALJ asked the VE to consider an individual who is "visually limited to work involving no more than frequent far and near acuity, frequent accommodation, frequent depth perception, and frequent field of vision. . . ." (Tr. 105.) I find the ALJ properly addressed Dr. Allbright's limitation

to "avoid work requiring reading print smaller than that seen in magazine print" in his question to the VE. The question is also supported by the overall evidence of record showing, at worst, Plaintiff had 20/70 vision in both eyes. (Tr. 961.)

Additionally, Plaintiff's description of how she performed the job supports the ALJ's determination Ms. Smith could perform her past relevant work. She testified:

> I worked on the food stamps, Medicaid, long-term care section of the Department of Human Services. I conducted interviews, verified income, resources, medical bills, household expenses, completed forms, calculated budgets, and determined eligibility for all programs. I keyed all that information into the computer and processed the case sections for individual clients and families, including application approvals, denials, changes, reevaluations. I did hearings, overpayments, under - issuances, made referrals to other agencies, like the Health Department, the housing office, the EOC [Equal Opportunity], places like that – – for families that needed other assistance that we didn't handle in our office.

(Tr. 81-82.)

Ms. Smith did not say she left her job because she could not perform these functions with her 20/70 vision. Rather, she testified that she retired because, "I was missing a lot of work because of it, seeing a lot of different specialists, and I got to where I couldn't handle the stress and demands of the job because of all the health issues I was having, and, like I said, I was missing a lot of work for all of these appointments and - -." (Tr. 82.) Later, Ms. Smith said she was experiencing problems performing her work because:

> Well, I was having a lot of problems with my eyesight, and I was having injections in my eyes, which I'm continuing to go for that, and it was causing problems with me being able to see the computer and the paperwork and was causing me a lot of problem. I had to use a - - my reading glasses and magnifying glass, and that was very stressful, and with my back pain and neuropathy, I was having trouble sitting at the desk.

(Tr. 84.)

Based on her testimony, I find no reversible error here. Her own statements fail to show her vision impairments totally preclude her from performing her past relevant work.

The record contains ample support as a whole that “a reasonable mind might accept as adequate to support [the] conclusion” of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also, Robertson v. Sullivan*, 925 F.2d 1124, 1126-27 (8th Cir. 1991).

Ms. Smith’s counsel has done an admirable job advocating for her rights. But it is not the task of a court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

I have reviewed the entire record, including the briefs, the ALJ’s decision, the transcript of the hearing, and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner’s decision is not based on legal error.

IT IS, THEREFORE, RECOMMENDED that the final decision of the Commissioner be affirmed, and that Plaintiff’s Complaint be dismissed with prejudice.

DATED this 2nd day of September 2026.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE